**Karel JACOBS and Virginia Jacobs**

v.

**Raymond BOOMER.**

Supreme Judicial Court of Maine.

June 24, 1970.

Sanborn & Moreshead, by Richard B. Sanborn, Augusta, for plaintiffs.

Linnell, Choate & Webber, by Paul A. Choate, Auburn, for defendant.

Before WILLIAMSON, C. J., and DU-FRESNE, WEATHERBEE, and POM-EROY, JJ.

DUFRESNE, Justice.

Plaintiffs are the owners of property lying on the northerly shore of Great Pond, one of the Belgrade Lakes, so-called, in the Town of Rome, Maine, and the defendant is the joint owner with his wife of the northerly end of Hoyt's Island, in said Great Pond, situated in the Town of Belgrade, Maine. Since his purchase of part of Hoyt's Island in 1929 the defendant has maintained on plaintiffs' shore property two or three wharves where he has docked his boats, taken on supplies and passengers for transportation to the Island. The area also served as the point of return for himself, his family and guests, to reach the mainland and unload materials when necessary. Access to the public highway, Route 225 in Rome, was available through a way over plaintiffs' land · known as Tracey's Lane which at the landing area ran in an east-west direction ·and more than one hundred feet to the north of the northerly shore line of Great Pond.

The plaintiffs' property used as landing area by the defendant and his guests was bounded on the west, by land of one Joyce one hundred eight (108) feet, more or less; on the north, by the southerly line of Tracey's Lane one hundred thirteen (113) feet; on the east, by a line projected southerly from Tracey's Lane ninety-eight

(98) feet, and on the shore of Great Pond, some ninety-five (95) feet. A loop or turn-around, within the near-quarter acre of area, permitted vehicular traffic to or from the shore without interference. Electric wires and telephone cable were maintained between the Island and the mainland, with poles and telephone equipment on the shore. The defendant made use of the plaintiffs' property in connection with his carrying on the business of renting summer cabins or lodgings to guests on Hoyt's Island. Automobiles, including that of the defendant, were garaged on land of the plaintiffs lying outside the landing area to the north of Tracey's Lane, but at times they had to be parked in the landing area when there were more vehicles than available stalls in the garages.

A dispute between the parties led to the instant complaint seeking a permanent injunction against the defendant, enjoining him from using the plaintiffs' land for the above described purposes, which use the defendant Boomer has threatened to continue. By way of counterclaim, Mr. Boomer seeks justification of his continued use of plaintiffs' property in the manner he has since 1929 on the ground that he acquired a prescriptive easement right therein and requests a judgment establishing such right and removing at the same time a cloud upon his title to the Hoyt Island property to which he asserts such easement rights are appurtenant. After hearing both the complaint and counterclaim without the intervention of jury the Justice below granted the permanent injunction limited to the reference landing area and adjudicated that the defendant had no estate or interest in said premises, allowing plaintiffs their costs. Defendant's appeal from said judgment must be denied.

■ In Dartnell v. Bidwell, 1916, 115 Me. 227, 98 A. 743, 5 A.L.R. 1320, this Court said that a prescriptive easement is created only by a continuous use for at least twenty years under a claim of right adverse to the owner, with his knowledge and acquiescence, or by a use so open, notorious, visible and uninterrupted that knowledge and acquiescence will be presumed. Acquiescence, the Court said, means passive assent such as consent by silence and does not encompass acquiescence in the active sense such as when a use is acquiesced in by means of the positive grant of a license or permission. Each of the stated elements of the definition of prescriptive right was said to be essential and open to contradiction. Thus, to support the defendant's claim of prescriptive easement, it must appear that his use of plaintiffs' property for the required twenty-year period was under a claim of right adverse to the owner, with the owner's knowledge and acquiescence.

In Burnham v. Burnham, 1931, 130 Me. 409, 156 A. 823, our Court further said:

> "[T]he ordinary rule is that, where there has been an unmolested, open, and continuous use of a way for twenty years or more, with the knowledge and acquiescence of the owner of the servient estate, the use will be presumed to have been adverse and under a claim of right, and sufficient to create a title by prescription, *unless contradicted or explained.*" [Emphasis supplied.]

Whether or not the defendant's use was under a claim of right adverse to the plaintiffs was the only issue contested by the parties and decided by the Justice below. To rebut the presumption that it was adverse as contended by the defendant, a presumption which might otherwise arise from the unmolested, open and continuous use by the defendant of plaintiffs' property as an access way to and from Hoyt's Island in connection with the defendant's conduct of his summer business on the Island, the plaintiffs have offered evidence of a rental agreement existing between the defendant and the plaintiffs whereby, so they claim, in consideration of the defendant's privilege to use plaintiffs' property as an access way to and from the Island, the defendant and his guests would pay, and have paid, rent on the basis of $25.00 per car, later increased to $35.00 per car. The defend-

ant's wife corroborated the payment of rent to the plaintiffs and their predecessor in title, associating the same with the use of plaintiffs' garages, from which it is argued that the rental agreement had exclusive reference to defendant's right to use the garages and did not purport to control defendant's rights to the use of the area as an access way for landing and docking. The plaintiff, Mr. Jacobs, however, testified that he had had some conversation with Mr. Bradley, his predecessor in title, concerning Mr. Boomer's parking and docking at the lake and that he was told of the existing arrangements with Mr. Boomer. Mr. Jacobs then informed Mr. Boomer that there would be no change in the existing arrangements except that the plaintiffs would not like to have any parking on the lake front, upon which it was agreed that Mr. Boomer would park his customers' private cars, including his own, in the garages and pay rent for the same.

The Presiding Justice ruled in favor of the plaintiffs and necessarily had to find, in support of his decision, that the defendant's use of the landing area for access to and from Hoyt's Island and for docking purposes was not under a claim of right adverse to the owners of the mainland, but was rather in subordination to their rights, and that the same was factually established in the evidence from the existence of a continuous understanding or agreement that rent would be paid and was paid throughout the defendant's ownership of the Island and his use of the mainland.

■ It is true that the Presiding Justice did not make specific findings upon which his ultimate decision was based. Without motion of either party made within 5 days after notice of decision, the Justice below in an action heard without a jury may of his own initiative find the facts specially but he is not obliged to do so. Rule 52(a), M.R.C.P. Although no specific findings of fact were made by the Presiding Justice, it must be assumed that

he found for the plaintiffs upon all issues of fact necessarily involved in his ultimate decision which was favorable to them. Harriman v. Spaulding, 1960, 156 Me. 440, 165 A.2d 47; Sanfacon v. Gagnon, 1933, 132 Me. 111, 167 A. 695. In testing the correctness of the decision in such cases, we must apply the "clearly erroneous" rule and findings of fact assumed to have been made in necessary support of the decision rendered, in the words of Rule 52(a), shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. The rulemakers contemplated the application of the same test as our Court formerly applied to all findings of a single justice whether sitting in law or equity. Maine Civil Practice, Field, McKusick and Wroth, Commentary, § 52.7. This single test controls in actions involving injunctive relief, Levasseur v. Dubuc, 1967, Me., 229 A.2d 201, as well as in complaints to remove a cloud on title, Sachelie v. Connellan, 1945, 141 Me. 267, 43 A.2d 300.

The defendant seeks to avoid the impact of the "clearly erroneous" formula, claiming, as he does, that the oral testimony is undisputed and uncontroverted. He argues that in such circumstances the appellate court is equally competent to apply the appropriate law to the facts as the trial court. In this, the defendant is in error. There was a definite conflict of evidence for the consideration of the Presiding Justice. Mrs. Boomer testified that up until 1965, the time when conflicts between the parties arose, there was no conversation or other indication from the owners of the mainland relating to the defendant's use of the right of way except for one instance, not specifically identified as to time, where Mr. Jacobs is said to have inquired if the Boomers had a right of way in their deed, to which Mrs. Boomer allegedly responded that there was none with the explanation that they had questioned the same at the time of purchase and were told that there was no need of it, and that Mr. Jacobs fur-

ther added he did not know if he could do anything but possibly could hold the Boomers up in business for a while. Mr. Jacobs on the other hand testified to no such conversation but stated that from the very beginning of his ownership of the shore property in 1959 and through the years he did bring up the same subject. He approached Mr. Boomer and offered to get together with him to give Mr. Boomer an easement, a right of way, so that he could have legal title to the right of way and could use the same without further strife and both parties would know where they stood. Mr. Jacobs then said that Mr. Boomer never took any further action on the subject and since it was more to the advantage of Mr. Boomer than his own, he awaited Mr. Boomer's further initiative therein, keeping open, however, his willingness to get together with him at all times. Furthermore, Mrs. Boomer expressly stated that the Bradley no-trespassing sign posted in July, 1958 on the landing area under R.S.1954, Chapter 174, Section 12, to prevent the acquisition of an easement therein by public use was so posted by him to protect the Boomers' use and their docks. Yet, the notice itself did not so disclose and Bradley, the following year, conveyed his premises to the Jacobs by warranty deed free and clear of all incumbrances, even though he included therein certain reservations not pertinent to the present issue.

The Presiding Justice had the duty to decide from all the attending circumstances, the testimony of the witnesses which as heretofore mentioned was inconsistent and contradictory in certain particulars, and the conduct of the parties throughout the years, whether the rental agreement admittedly existing between the defendant and the plaintiffs and their predecessors in title destroyed any claim of adverse use set up by the defendant, or whether the rental agreement related solely to the garaging of the automobiles of the defendant and his guests and was in no way connected with the use of the landing area as an access way to Hoyt's Island.

■ Where in its origin a use is shown to be by license or permission of the owner of the servient tenement, such as where rent is paid for its use, the element of adverse user disappears and no prescriptive rights can arise therefrom. Rollins v. Blackden, 1914, 112 Me. 459, 92 A. 521, Ann.Cas.1917A, 875; Hamblen v. Irish, 1918, 117 Me. 522, 105 A. 119.

The Justice below filed a decree forever enjoining the defendant from using the landing area without the plaintiffs' permission and declaring that the defendant has no estate or interest therein. He reached his conclusions by considering all the evidence in the case including the surrounding circumstances which oftentimes are vital vanes indicating where the probabilities of truth lie. Viewing the evidence in the light of the defendant's submission to the plaintiffs' orders to put the electric wiring underground at the shore and to move the telephone equipment to suit the convenience of the servient owners, and giving consideration to the fact that the defendant unsuccessfully attempted to secure mainland property before the plaintiffs purchased the land, the Justice below was also in the advantageous position of having seen and heard the witnesses in interpreting the whole evidence to solve the issue, whether the defendant's use was adverse. His observations of the witnesses, their poise or anxiety, the overstatement or underestimation of their position, may have influenced him in siding with the plaintiffs' version.

■ Bearing in mind that the existence of an adverse user is a question of fact, Burnham v. Burnham, 1931, 130 Me. 409, 156 A. 823, supra, and conscious of the admonition that this Court must give due regard to the opportunity of the Presiding Justice to judge of the credibility of the witnesses, we are not convinced from a careful study of the record in the instant case that the Court below was clearly in error when it adjudged that the defendant's use of the landing area was in subordination to the plaintiffs' title and not in

the exercise of a prescriptive easement right adverse to the plaintiffs.

Restricting injunctive relief to the landing area only, the Court below inferentially ruled that the defendant had a prescriptive easement right in Tracey's Lane, so-called, from the public highway, Route 225 in Rome, to the landing area which said access road abuts, but not over the landing area itself. This implied adjudication as between the plaintiffs and the defendant will permit the defendant to negotiate with the plaintiffs or some other shore owner to secure shore rights from Tracey's Lane to the pond. The record, however, indicates that access may be had to Hoyt's Island from the public landing in the Town of Belgrade.

The entry will be

Appeal denied.

WEBBER and MARDEN, JJ., did not sit.