**STATE of Maine**

v.

**Larry D. FLETCHER.**

Supreme Judicial Court of Maine.

March 2, 1972.

Joseph E. Brennan, County Atty., Portland, for plaintiff.

Caroline Glassman, Portland, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, WERNICK, and ARCHIBALD, JJ.

WEATHERBEE, Justice.

After he had been convicted following jury trial of the offense of breaking, entering and larceny in the nighttime and while he was serving the State Prison sentence imposed upon him, the Defendant filed a petition for the writ of statutory post-conviction habeas corpus. 14 M.R.S.A. §§ 5502–5508. Following hearing, a Justice in the Superior Court found that Defendant was entitled to a belated appeal from the judgment and conviction as a result of the trial court's non-compliance with M.R.Crim.P., Rule 37(c)[1] and ordered that the judgment be set aside and that the case be remanded to the Superior Court for re-sentencing. When Defendant came before the Justice of the Superior Court for re-sentencing, he moved that judgment be arrested for the reason that he had at that time received an absolute discharge from the prison sentence in question. Over the objections of Defendant's court appointed counsel, the Defendant was re-sentenced and he appealed.

This is the appeal from the new judgment and conviction and from the denial

---

1. M.R.Crim.P., Rule 37(c). " . . . When a court after trial imposes sentence on a defendant not represented by counsel, or represented by court appointed counsel, the defendant shall be advised of his right to appeal, and, if he so requests, the court shall cause a notice of appeal to be prepared and filed on behalf of the defendant forthwith. . . . "

by the Justice of Defendant's Motion in Arrest of Judgment. We sustain the appeal.

A brief chronology of events shows that:

1) On September 12, 1969 Defendant was sentenced to serve a term of not less than 1½ years and not more than 3 years in prison and he commenced to serve this sentence.

2) Sometime (not disclosed by the record) after that, and while serving his State Prison sentence, Defendant filed a petition for the writ of statutory post-conviction habeas corpus and the matter was heard by a Justice in the Superior Court.

3) On January 5, 1971 that Justice's decree setting aside the judgment and remanding for resentencing was filed.

4) On January 12, 1971 the Court received word from the Prison that Defendant had been paroled on January 4, 1971.

5) On April 30, 1971 Defendant was before the Court and counsel was appointed for him. A new warrant of judgment and conviction issued and Defendant moved for arrest of judgment. His motion was denied. At this point, the Court was for the first time informed by the Defendant that he had, in fact, received on January 4, 1971 an *absolute discharge* from the sentence—although it was not until a month later that a certificate was filed in proof of this. On April 30 he was again sentenced to imprisonment in the State Prison for a term of not less than 1½ and not more than 3 years. However, the judgment recited that the Defendant was to be credited with all the time he had served in the prison on the sentence which was originally imposed.

6) Defendant appealed.

The decree of the Single Justice setting aside the first judgment and remanding for resentence was for the sole purpose of making it possible for Defendant to file a belated appeal from the judgment and conviction as a result of the Court's failure to comply with Rule 37(c). The Justice on habeas corpus found no defect in the judgment or sentencing procedure in themselves and apparently ordered resentencing only as a convenient method of establishing a starting point for the running of the times for perfecting the appeal. He was following the practice approved by some of the United States Circuit Courts of Appeal. Since that time, in Boyd v. State, Me., 282 A.2d 169 (1971), this Court has had the opportunity to address itself to the procedure to be followed when, on habeas corpus, the Justice finds that a Defendant has been deprived of the opportunity to appeal through constitutional deficiency or non-compliance with the Rule. We found in *Boyd*, in effect, that non-compliance with Rule 37(c) does not invalidate the judgment or sentence and that neither logic nor policy requires a re-sentencing. There, we ordered the Clerk to file for that Petitioner the notice of the appeal which had been denied him.

The effect of the decree which the Single Justice made on Petitioner's habeas corpus petition was only to allow Defendant a late appeal. An appeal from a judgment of conviction in the Superior Court suspends the operation of the judgment and stays the execution of the sentence (if the Defendant so elects or if he is admitted to bail, as this Defendant was). 15 M.R.S.A. § 1701; M.R.Crim.P., Rule 38(a)(1). The ultimate denial of an appeal restores the judgment to effectiveness and the sentence regains its operative force. No new sentence is necessary or effective except in the event the first sentence is invalidated by the Court.

The re-sentencing of this Defendant was unnecessary and a nullity—a potentially effective sentence had already been imposed upon him. The new "sentence" had no legal effect and in no way deprived the Court of jurisdiction over the Defendant. It is elementary that a Defendant's appeal does not deprive the State

of jurisdiction to try him again if, on appeal, his conviction is set aside (State v. White, Me., 285 A.2d 832 (1972)) and to impose (within the limitations of North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)) a new sentence if a Defendant's new trial results in a new conviction.

On January 4, 1971, the day before the Single Justice's decree, the Defendant received an absolute discharge from the original sentence and the Court would then have lost jurisdiction over Defendant if it were not for Defendant's pending petition in habeas corpus. Although Defendant had fully completed his sentence he was entitled under his already pending petition for the writ of statutory post-conviction habeas corpus to seek an appeal for the purpose of removing the conviction from his record. Carafas v. La-Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L. Ed.2d 554 (1968); Staples v. State, Me., 274 A.2d 715 (1971). On habeas corpus, Defendant sought—and was granted—an appeal from the judgment of conviction. On appeal he now urges that he never was validly convicted or sentenced and in doing so he gives the Court jurisdiction to determine these issues.

Because the uncertainty as to times for perfecting late-granted appeals which existed until *Boyd,* we treat this Defendant's appeal as timely perfected.

Defendant's appeal attacks his conviction on several grounds. We need consider here only one of the issues raised by Defendant.

Testimony at trial revealed that on March 17, 1969 at about 10:15 P.M. a Mrs. Mullen who lived directly across the street from the Woodfords Club in Portland looked out of her window and saw a tan automobile of about 1964 vintage stop in front of her house. As she watched, a strange man wearing a sports jacket got out from the passenger side and went across the street to the Club. About five to ten minutes later he returned to the car carrying a very heavy box of some kind. Another person in the car opened the rear car door so that he could put the object in the back seat and then the car drove away very rapidly toward Woodfords Corner. Mrs. Mullen wrote down the registration number of the car on a slip of paper.

Within another ten or fifteen minutes Police Officer Morrison, on a routine check, noticed that the glass in the Club front door had been broken out. The Club steward was called and it was discovered that a forcible entrance had been made since the steward left the Club secure shortly after 10:00 P.M. and that the cash register containing a dollar bill and 25 cents in change had been stolen along with several cartons of cigarettes.

Officer Morrison at once notified the police station of the break. Other officers soon arrived at the scene and, unknown to Officer Morrison, Mrs. Mullen gave one of the officers the slip of paper containing the registration number of the car in which the thief had escaped.

The record does not reveal who that officer was, what he did with the slip of paper, what use he may have made of the number or what the number was. At trial, Mrs. Mullen could not remember the number.

About 11:00 P.M. a police officer found the cash register on Revere Street in the Woodfords section.

At about 11:30 P.M. Detective Coppersmith was sent by the Dispatcher to go to Plum Street in Portland, just east of Monument Square, to observe a particular automobile, the registration number of which the Dispatcher gave him. He found the car bearing that number, a tan Pontiac, parked at the curb. Its hood was quite warm and as the officer walked past he could see through the window that on the back seat there were some slivers of wood, two small keys and some playing cards. A half hour later, the Defendant and two other persons appeared and got in the

front seat of the car, with the Defendant behind the wheel, and started to move away. The officer stopped the car when it reached Fore Street and told Defendant he was under arrest for breaking, entering and larceny in the Woodfords Club.[2]

The car was then blocking traffic on Fore Street and it was hauled by a wrecker to the police garage accompanied by Officer Piedlock who was with Detective Coppersmith when Defendant was arrested. Piedlock, who is an Evidence Technician, searched the car at the police garage and found on the floor of the back seat a tire iron, a tire changing tool, fragments of wood which were of the same type of wood as some other slivers which the witness later saw by the cash register, three keys, one of which fitted the door on the side of the cash register, a letter from a keyboard which fitted a missing letter on the keyboard of the cash register, some pennies that were strewn on the back floor area and two playing cards which had the same design as those he later saw on the floor near the counter at the Woodfords Club. A flashlight and a pair of men's gloves were found on the front seat.

At trial, all of these exhibits were admitted into evidence over the objection of the Defendant. The Defendant claims their admission was prejudicial error. We agree.

The exhibits were taken from Defendant's car as a result of a warrantless search and seizure. The State contends that the search was justified because it was incident to a lawful arrest and also because the officers had probable cause to believe that the car contained either some of the stolen goods or evidentiary articles.

■ The State's first claim of justification for the search must certainly fail. Whether there was or was not probable cause for the arrest, the search which produced the incriminating evidence was made at the police garage some time after the arrest on the street and cannot be considered a search incident to an arrest.

"Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777, 780 (1964).[3]

The State, however, urges the alternate ground that there was probable cause for the search of the car.

The status of the exhibits in evidence will thus be determined by the answer to one question—At the time Officer Piedlock searched the Defendant's car at the police garage, did the police have probable cause to believe that it contained articles which had been stolen in the break at the Woodfords Club or which would furnish evidence as to criminal responsibility for the break?

Our answer must be that they did not.[4]

2. A South Portland police officer also testified that earlier that evening he had received, through police channels, information that generated an interest on his part in a 1962 tan Pontiac automobile. He saw this automobile in South Portland about 8:45 P.M. that evening and observed the Defendant get into it—with one other man—and drive it away in the opposite direction from the City of Portland at about 9:00 P.M.

3. The Court in *Preston* was, as we are, discussing the search of an automobile and not a search of the person. Since the date of the search in the present case, the United States Supreme Court again in Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) and in Coolidge v. New Hampshire, 403 U.S. 462, 91 S.Ct. 2036, 29 L.Ed.2d 580 (1971) declined to hold that a search of an automobile distant from the scene of an arrest was incident to the arrest.

While the following discussion may make it apparent that there was no probable cause for the arrest, we do not find it necessary to make this specific decision.

4. We realize that other considerations—in addition to the existence of probable cause —must be present to justify the immediate warrantless search of an automobile stopped on the street. The special exigent circumstances which if *also* present would entitle an officer to make a warrantless

We recently defined the probable cause which would support a warrantless arrest:

"Probable cause exists where the facts and circumstances within the knowledge of the officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent and cautious man in believing that the arrested person had committed or was committing the felonious offense. The essence of 'probable cause' is reasonable ground for belief of guilt. . . . The information must establish more than a bare suspicion . . . but it need not equate the quantum of proof necessary to support a conviction . . .. Probable cause, however, is to be evaluated from the collective information of the police at the time of arrest and not merely on the personal knowledge of the arresting officer. . . . The knowledge of each officer working in co-ordination in an attempt to solve a reported crime is the knowledge of all. Probable cause can rest upon the collective information of the police, rather than solely on the knowledge of the officer who actually makes the arrest. . . .

. . . . . .

Furthermore, it is not necessary that the collective knowledge of the other police officers be imparted to the arresting officer to make out probable cause. . . ." State v. Smith, Me., 277 A.2d 481, 488, 489 (1971).

■ Similar language would correctly describe information which, in the possession of the police, would constitute probable cause for a warrantless search. This information must be such as, in this case, would entitle a reasonable and cautious man to believe that the search would disclose the stolen items or items which would aid in the identification of the thief. Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

"In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

■ We have equated "probable cause" with "reasonable grounds to believe" in searches as well as in arrests. State v. Mosher, Me., 270 A.2d 451 (1970). We have added, however, that more evidence is needed to justify an officer in making a search without a warrant than is required for finding probable cause for issuance of a search warrant. State v. Hawkins, Me., 261 A.2d 255 (1970). The particular facts of each case must be measured against the "reasonable grounds to believe" standard.

We will repeat a summary of the extent of the knowledge as to the Defendant's participation which the police had at the time of the search, as disclosed by the record:

The break took place at about 10:15 or 10:20 P.M. A policeman (who did not

search of a *mobile vehicle* ("although the result might be the opposite in a search of a home, a store, or other fixed piece of property") have been discussed by the United States Supreme Court in Preston v. United States, supra, in Carroll v. United States, supra, and, since the judgment in the present case, Chambers v. Maroney, supra and in Coolidge v. New Hampshire, supra.

Because of our determination that there was no probable cause for the search, we do not reach the question of special exigencies. Neither are we required to consider whether a warrantless search (assuming probable cause) would still have been justified after the car had been removed to the police garage. As to this, see Chambers v. Maroney, supra and Coolidge v. New Hampshire, supra.

These issues, of course, become academic if probable cause is lacking. Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968).

testify in this case) was given the registration number of the car in which the thief drove away. At 11:30 P.M. Detective Coppersmith observed a car parked in another section of town. It was a tan Pontiac and its hood was warm. (Some three hours earlier, Defendant had been seen entering a tan Pontiac in South Portland by a South Portland police officer who, for some undisclosed reason, had been advised to observe the conduct of the occupants of that particular car.) Detective Coppersmith could see some small slivers of wood, two small keys and some playing cards lying in the back seat.[5] He had been told by the Dispatcher to watch for this particular automobile with this particular registration number. A half hour later, Defendant and two others entered the car and Defendant started to drive it away when he was arrested. In the meantime, the police had found a cash register which had been broken open and which appeared to have been the one taken from the Woodfords Club.

■ Of course, just as probable cause for an arrest cannot be justified upon facts learned after the arrest (State v. Hawkins, supra.) neither can probable cause for the search be bolstered by evidence discovered in the search.

Although we might surmise—as the jury probably did—that the police officer to whom Mrs. Mullen gave the registration number of the car occupied by the thief, gave that number to the dispatcher and that the dispatcher gave that number to Detective Coppersmith and that the registration number of the thief's car was the same as the registration number of the car in which Defendant started to drive away on Plum Street, the record does not reveal any such facts. If the police had any reason before the search to relate to the Woodfords Club crime the splinters of

wood, the two keys or the playing cards which Detective Coppersmith saw through the car window, the record does not disclose this, either. While at trial Mrs. Mullen described the thief's car as "tan" the record does not show that the police knew this when Detective Coppersmith arrested Defendant while he was driving a tan car. The absence of some evidence that the car found on Plum Street was the same car seen leaving the scene of the crime or that Defendant bore resemblance to the person seen carrying out the cash register or that the items observed through the car window before the arrest bore some relation to the crime leaves the Defendant and his car completely unconnected with the break at the Woodfords Club.

An inference that the Dispatcher's concern with the registration number of Defendant's car must have resulted from information given by Mrs. Mullen would hardly be justified in view of the fact that the area police had been alerted to observe the activities of Defendant's vehicle some two hours before the break occurred.

■ As the record fails to disclose probable cause for the search, the exhibits seized in that search were admitted into evidence through error.

■ The jury's conclusion that Defendant's guilt had been proved could not be supported (and the Presiding Justice's denial of Defendant's Motion for Acquittal could not be sustained) if it were not for the inference of guilt from recent possession which the jury might have drawn from the fact that State's Exhibit 8, found on the floor of Defendant's car during the search at the police garage, was identified as a letter from a cash register keyboard which fitted the blank space of a missing key on the damaged stolen cash register. The indictment charged the Defendant

---

5. When the officer first observed the slivers of wood, playing cards and two small keys through the car window *these* objects were in his "plain view". However, the record doesn't disclose any significance in

*their* presence there relative to the Woodfords Club break which would furnish probable cause for the warrantless search and the seizure of the *other* objects.

with larceny of the cash register and the jury could have found that Defendant was in recent and exclusive possession of a part of this stolen property. State v. Poulin, Me., 277 A.2d 493 (1971).

This letter from the keyboard, however, was found and seized after a search which —as far as the record reveals—was unlawful. The erroneous admission of the exhibit was prejudicial.

Appeal sustained.

POMEROY, J., did not sit.

All Justices concurring.