**STATE of Maine**

v.

**Mark Lee WALKER.**

Supreme Judicial Court of Maine.

July 16, 1975.

Donald H. Marden, County Atty., Augusta, for plaintiff.

Lipman, Parks & Livingston, by John M. Parks, Sumner H. Lipman, Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WER- NICK, ARCHIBALD and DELAHANTY, JJ.

DELAHANTY, Justice.

On a warrantless search of the automobile of defendant, a law officer seized a quantity of illicit drugs. Defendant's motion to suppress the evidence seized was granted by the Superior Court (Kennebec County). On the initiative of the State, the Superior Court reported to the Law Court the issues raised by the granting of the defendant's motion to suppress. We deny the State's appeal.

In the early morning hours of March 21, 1973, Donald E. Drummond, a police officer of the Hallowell Police Department, was patrolling in his cruiser when he heard a police radio broadcast of a robbery in Phillips, Maine. According to the broadcast, as related in the testimony of Officer Drummond, a drug store had been held up at 8:00 or 9:00 p. m. on March 20 by two male armed robbers, who had taken a large quantity of "pills" and approximately $100 in cash. The pair reportedly fled in a Volkswagen bearing Massachusetts license plates and a chrome ski rack on the roof. The broadcast described one of the hold-up men as being 5′6″ in height, around 150 pounds in weight, and with shoulder-length reddish hair.

At around 2:00 or 2:30 that morning, Officer Drummond noticed a 1965 or 66 white Mercury sedan with no ski rack, stopped at a Scenic Turn-out by a state highway. Though the car was not in motion, its motor was running. As the officer drove alongside the car, the occupant, Walker, sat up and came into view. Defendant rolled down his window, and the officer stated that "he just wanted to check to see if you were all right." Defendant said that he was resting, and the officer departed. At the hearing the officer testified that he recalled the defendant to have long hair, of light color, and that the defendant seemed short because of the way he was sitting in the car.

Within an hour the radio broadcast of the Phillips hold-up had been repeated, with substantially the same information as previously reported. Officer Drummond testified that this second broadcast "just rung a bell to this man that I had seen before, so I went back to check him again." The officer returned to the defendant's car, which was still parked in the Scenic Turn-out. At this time the motor was not running. The officer approached the car, knocked on the window, and requested the defendant's drivers license and registration. Returning to his cruiser, the officer compared the physical description of defendant on these documents with the reported description of the robbers. Upon satisfying himself that there was some similarity, the officer radioed for a back-up officer to assist at the scene. A supporting officer arrived within half an hour. He told Officer Drummond that the defendant had a "criminal record." At no time at the hearing or in the record was the defendant's alleged criminal record explained or integrated to the State's case.

By this time it was 4:00 or 4:15 a. m. Officer Drummond approached defendant, who had been meanwhile waiting; the officer told defendant that there had been a hold-up and that he wanted to search defendant's car. According to Drummond, defendant said "Certainly, go ahead." The defendant remained seated behind the steering wheel while the officer inspected the car with a flashlight. Finally the officer reached the glove compartment. He started to empty the contents of the glove compartment onto the front seat. Among the items placed on the seat was a plain brown paper bag.

At this point defendant interposed his first objection to the search. "Don't look in there," he said, "that's personal." The officer said that the glove compartment was the last part of the car to be searched, that defendant ought not have anything to hide, and that he, the officer, intended to search the paper bag. The officer stated: "I have a search warrant under the Carroll Doctrine." Defendant then questiond whether the officer, in fact, had a warrant. Conceding that he did not, the officer nevertheless stated: "I do not have a warrant, however, I have authority to search the car, and I am going to look at the bag." The officer testified that the defendant "still said no."

The defendant was then ordered to leave the car and to go to and sit in the cruiser. This the defendant did. The officer then picked up the bag, holding it by its top and feeling its sides as he carried it back to the cruiser. The officer testified that by the time he was carrying and feeling the bag he had determined there was no weapon within it such as a gun or a knife that could menace him. Neither did the bag's surface disclose to the officer's probings such telltale tactile qualities as would reasonably suggest the presence of illicit drugs. Officer Drummond testified that "I was interested in what was in the bag, naturally." And so, finally, he looked into the paper bag and found a number of small plastic bags, each of which held small white pills. When tested by the State laboratories, these pills were alleged to be Phendimetrazine, a controlled substance the possession of which by defendant was a violation of 22 M.R.S.A. § 2210.

■ The Grand Jury of Kennebec County indicted defendant for violation of the above statute. The Superior Court, after a hearing, granted defendant's motion to suppress the commodities seized, as follows: " . . . motion granted as to suppression, denied as to return." Although no specific findings of fact were made by the presiding Justice, it must be assumed that he found for the defendant upon all issues of fact necessarily involved in the ultimate decision which was favorable to defendant. Boynton v. Adams, Me., 331 A.2d 370, 375 (1975); Jacobs v. Boomer, Me., 267 A.2d 376, 379 (1970).

■ In testing the correctness of the Superior Court's decision we must apply

the "clearly erroneous" rule, and findings of fact assumed to have been made in necessary support of the decision rendered shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses. Id. The burden of proof on the State to sustain the warrantless search is the ordinary civil standard of preponderance of the evidence and not proof sufficient to establish guilt. State v. Heald, Me., 314 A.2d 820, 829 (1973); see State v. York, Me., 324 A.2d 758, 763 (1974); M.R.Civ.P. 52(a).

The State argues that the investigating officer had probable cause, under exigent circumstances, to justify a search of defendant's car. We will consider whether, on the record, the officer had such probable cause as would render the assumed findings of the Superior Court clearly erroneous. We will further consider whether the officer had adequate probable cause at the outset to search the car generally, or whether, by defendant's conduct, the officer acquired probable cause at some point during a permissible search.

■ We do not understand the State to contend that the ultimate seizure of the illicit drugs may be justified by reason of any consent which defendant may have given. We think an issue regarding consent fairly appears on the facts of the case. But an examination of the State's brief persuades us that the State does not argue consent as a separate, distinct justification for the search and seizure. Thus we conclude that the issue of consent must be considered as either waived or abandoned by the State, since it was not briefed or argued. State v. King, Me., 330 A.2d 124, 125 (1974); State v. Trott, Me., 289 A.2d 414, 417 (1972); M.R.Crim.P. 39(a). To

the extent that the defendant's efforts to limit the subject and area of his initial consent may or may not have been a proper element of probable cause, the issue of consent will have a bearing on the present appeal.[1]

■ The essence of probable cause is reasonable ground for belief of guilt. State v. Smith, Me., 277 A.2d 481, 488 (1971); State v. Hawkins, Me., 261 A.2d 255, 261 (1970). Where a warrantless search is to be undertaken, there must be probable cause based on information such as would entitle a reasonable and cautious man to believe that the search would disclose criminal conduct or items that would aid in identifying or establishing the commission of crime. See State v. Fletcher, Me., 288 A.2d 92, 97 (1972). Moreover, a warrantless search may be justified only if there are exigent circumstances in addition to the prerequisite probable cause, and the methods, time, and place of the search are reasonable under all the circumstances constituting the exigency. State v. Stone, Me., 294 A.2d 683, 691 (1972).

■ In the present case, there was no probable cause for the officer to search the defendant's car. Therefore we do not reach or consider any issues concerning the exigencies of the circumstances; the absence of probable cause is dispositive. See *Fletcher*, supra, 288 A.2d at 96–97 n. 4.

At the time Officer Drummond approached the defendant's car for the second time, the officer had only bits of knowledge concerning the defendant and the hold-up in Phillips. The physical description of the hold-up man was general in nature although it might have been a basis for partial identification under proper circumstances. But there is no suggestion in the record that the officer ever

1. It appears that the Superior Court may have found that any consent given by the defendant to the search of the paper bag lacked voluntariness. Here, it is plausible on the record that the search of the bag overbore defendant's attempted objections and

that any consent of the defendant asserted as grounds for the search of the bag may represent the defendant's mere submission to the officer's forceful claim of lawful authority to search. See State v. Barlow, Me., 320 A.2d 895, 899–901 (1974).

really determined that the defendant closely resembled the description of the hold-up man. The officer's only comment was that the defendant had "long hair" of "light color" and that the defendant looked short because of "the way he was sitting in the car." We think that the officer's identification of the defendant, either by itself or in conjunction with the other elements in the case, does not show a reasonably close physical resemblance between the defendant and either of the hold-up men. Moreover, even if light-colored long hair and shortness have some probative tendency to corroborate the broadcast description, that tendency is powerfully outweighed by the utter dissimilarity of the defendant's car from the car attributed to the robbers. We do not say that the mere dissimilarity of cars ought to inhibit an officer's investigation where there are other elements of probable cause that sustain him. But here the physical resemblance of the defendant is too innocuous to establish probable cause in the face of manifest contradictory factors. See *Fletcher,* supra, 288 A.2d at 98.

Neither do other factors bearing on probable cause support the officer's conclusion to undertake a warrantless search. Defendant's location at the Scenic Turn-out did not place him in any special proximity to the scene of the crime, nor did police investigation trace him from the scene to the locale of the Turn-out. Compare State v. Heald, Me., 314 A.2d 820, 822–26 (1973).

As to the allegation that the officer was informed of the defendant's "criminal record", on the facts of this case we cannot consider this factor as affecting a determination of probable cause. It is settled that an officer's knowledge of a suspect's prior criminal conduct is not, by itself or in conjunction with slight facts, probable cause for arrest. See Beck v. Ohio, 379 U.S. 89, 97, 85 S.Ct. 223, 228, 13 L.Ed.2d 142, 148 (1964). Here, there is no statement of the nature of the criminal record. There is nothing that suggests that the "criminal record" links defendant with reasonable specificity to the criminal conduct forming the basis for police inquiry.

We conclude that the officer did not have knowledge amounting to probable cause when he commenced to search the defendant's car. However, the search of the car up to the time that the paper bag was removed from the glove compartment may have been justified by the defendant's consent, since defendant had stated "Certainly, go ahead," when the officer requested to search the car. Assuming this is so, it might be argued that the defendant's objections to the officer's searching the bag affected probable cause in either of two different ways. First, the defendant's objection may have been decisive in accumulating probable cause relating to the robbery in Phillips, so that the very act of objecting to the search of the bag created at that point probable cause sufficient for a warrantless search (further assuming the presence of exigent circumstances). Secondly, the defendant's objection and the presence of the paper bag may have sufficed to form a separate and distinct basis of probable cause as to the defendant's guilt in regard to possibly illegal contents within the bag. We reject both of these theories as bases for probable cause.

The defendant's objection to the officer's search of the paper bag does not cumulate with other factors to establish probable cause relating to the hold-up in Phillips. The brown paper bag was not transparent, and no reason appears to connect brown paper bags, whose contents are unknown, with the hold-up in Phillips. See *Fletcher,* supra, 288 A.2d at 98; cf. United States v. Dichiarinte, 445 F.2d 126, 129 & n. 2 (7th Cir. 1971).

Neither do we think that defendant's objections to the search of the bag, in and of themselves, are material to any determination of probable cause concerning criminal conduct to be probed by a search of the bag. The bag itself was not an unduly suspicious object. Cf. *Dichiarinte,* supra,

445 F.2d at 130–31. Nor do the defendant's objections to the search of the bag amount to furtive conduct which constitutes probable cause. Cf. Annot., 45 A.L.R.3d 581, 584–85 (1972). Even if defendant's objections were construed as a limitation or revocation of a prior valid consent, the objections were apparently innocent and an assertion of a constitutional right. People v. Martinez, 259 Cal.App.2d Supp. 943, 65 Cal.Rptr. 920, 922 (1968); but see People v. Kennard, 175 Colo. 479, 488 P.2d 563, 564 (1971). But we do not explicitly decide this point. We are satisfied that defendant's objections, taken by themselves, were the only basis the officer could have had for a search of the bag, and that as such, the objections could not possibly be a reasonable basis for belief of the defendant's guilt of some undefined and unspecified crime.

For these reasons, the record before us does not establish probable cause as a matter of law. The Superior Court's decision was not clearly erroneous.

The entry must be:

Appeal denied.

All Justices concurring.