STATE of Maine

v.

Carroll LIBBY.

Supreme Judicial Court of Maine.

Argued Sept. 17, 1982.

Decided Dec. 6, 1982.

David M. Cox, Dist. Atty., Gary F. Thorne (orally), Asst. Dist. Atty., Bangor, for plaintiff.

Philip Cole Worden (orally), Guilford, for defendant.

Before GODFREY, NICHOLS, ROBERTS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, R.R.J.

CARTER, Justice.

After a bench trial in Superior Court (Penobscot County), the defendant, Carroll Libby, was found guilty of vehicular manslaughter, 17–A M.R.S.A. § 203(3) (Supp. 1980). On appeal, he contends: (1) the finding of probable cause to believe that he was under the influence of intoxicating substances was clearly erroneous and the suppression court erred in denying his motion to suppress the results of his blood test; (2) the trial court erred in admitting the results of his blood test because there was insufficient foundation establishing the reliability of the test; (3) the trial court erred in denying a motion *in limine,* ruled on during the course of trial, to suppress the results of his blood test because the consent requirement stated in the statute, 29 M.R.S.A. § 1312 (Supp.1979), was not satisfied; (4) the trial court erred in admitting into evidence the statements made by the defendant at the hospital to his physician. We

vacate in part the order denying the defendant's motion to suppress the results of the blood test and vacate the judgment because of an erroneous evidentiary ruling at trial concerning the admissibility of the blood test results.

## I. *Facts*

In May, 1981, the defendant's vehicle collided with another vehicle on Route 1A in Hampden. One of the three people in the second car died in the accident. The medical examiner testified that the person died of a fractured neck as a result of striking her head on the windshield at impact. The defendant was found semiconscious and alone behind the wheel of his vehicle, which was found headed in a northerly direction in the southbound lane. He was bleeding heavily from the mouth.[1]

The accident occurred on a curve at the top of a hill. The lanes of travel were divided at the accident scene by a faded double line. The time of occurrence was around noon. It had rained intermittently earlier in the day and the road surface was wet. Four police officers were called to the scene. The first to arrive, a State Police Trooper, recorded in his accident report that it appeared to him that "this was apparently a relatively slow-speed collision." This conclusion appears to have been generated by the absence of skid marks at the scene, which ruled out any determination of the speed of the vehicles, and the absence of post-collision movement of the vehicles, which prevented any scientific reconstruction of the accident. One officer and one witness observed that the defendant was in a dazed condition and was, apparently, masturbating in his car immediately after the accident. The defendant remembered nothing about events occurring prior to the accident until the time he awoke in the hospital.

The defendant was taken to the emergency room of Eastern Maine Medical Center. At the suppression hearing, the emergency room physician described the defendant as in a state of sleepiness, with somewhat slurred speech, and not cognizant of his situation or where he was. This physician felt that the defendant was under the influence of some chemical substance. This opinion was based on the doctor's observations and on the defendant's statements that he had taken some medication. A second doctor who examined the defendant testified at the hearing that the defendant's condition was such that he was incapable of giving consent for a blood test. Two emergency room nurses also testified at the hearing concerning the defendant's condition and conduct. The emergency room physician drew the defendant's blood sample in the presence of police officer Mueth. The results of a later analysis of the blood sample showed the presence of benzoylecgonine, a metabolite of cocaine.

Prior to trial, the defendant moved, pursuant to Rule 41(e), M.R.Crim.P., to suppress the results of his blood test. The defendant alleged that the blood was illegally seized without a search warrant and without his knowing and voluntary consent.[2] The initial focus of the suppression hearing was on only the issue of the defendant's consent to the blood test; the parties and the court thought that the issue of probable cause to believe that the defendant was operating a motor vehicle under the influence was not disputed. The emergency room doctor, two emergency room nurses, and a neurological surgeon testified at the suppression hearing concerning the defendant's appearance and conduct.

Following that testimony, the parties realized that the court and the prosecutor believed that the defense had conceded *the existence of probable cause* for the search

---

1. He had a broken jaw when examined at the hospital.

2. The defendant based this contention exclusively on the required constitutional content of the voluntariness concept and not on any derivation of meaning from the requirement of

state statutory law. This is in accord with our recognition that the proper use of a motion to suppress is to achieve recognition of a claim "grounded in *constitutional* right." *Gendron v. Pawtucket Mutual Insurance Co.*, 409 A.2d 656, 659 (Me.1979) (emphasis added).

and seizure while the defense believed that the State had conceded *the lack of probable cause.* At that point, the court ruled that (1) the State had not proved knowing and voluntary consent to the taking of the blood sample, (2) the search was conducted under exigent circumstances, and (3) the hearing would be reopened to litigate the probable cause issue of whether the police were justified in ordering the defendant's blood test. Because the court found that the doctor's testimony at the hearing clearly established the existence of probable cause to believe that the defendant was under the influence of an intoxicating substance, the hearing was reopened only on the issue of whether the police had probable cause to believe that the defendant was operating a vehicle. Officer Ritchie, called by the State, testified without objection, however, to facts at the scene of the accident that were directly relevant to the issue of probable cause to believe the defendant was under the influence of an intoxicating substance.

The officer testified that he found the defendant's car heading north in the southbound lane of Route 1A. Officer Ritchie spoke to Officer Mueth and Trooper Myers, both of whom had arrived earlier at the scene. Officer Mueth related his conversation with a resident of the area who heard the accident and arrived first at the scene. That person had stated that she observed the defendant in his car and that he appeared to be dazed and to be masturbating. Trooper Myers told Officer Ritchie that, on his arrival at the scene, the defendant was in the driver's seat of his car in a very dazed condition, with a bloody face, and was masturbating. Officer Ritchie discussed the information with an Assistant District Attorney called to the scene; she decided to have a blood sample taken from the defendant. Officer Mueth accompanied the defendant to the hospital.

At the conclusion of Officer Ritchie's testimony, the suppression court found that there was probable cause to believe both that the defendant had been operating a motor vehicle and that he had been operating the vehicle while under the influence of intoxicating substances. The court based this finding on the testimony of those witnesses testifying concerning their observations of the defendant *at the hospital* and on the defendant's statements to the emergency room physician. Accordingly, the court denied the motion to suppress the results of the defendant's blood test.

II. *The Suppression Ruling*

■ The taking of a blood sample for purposes of chemical analysis to produce evidence is a search and seizure within the scope of the Fourth Amendment proscription of "unreasonable searches and seizures." *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Unless shown to be within an exception to the general rule, a search and seizure is *per se* unreasonable unless supported by facts showing "probable cause" reflected by a search warrant. *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Hilton,* 469 F.Supp. 94 (D.Me.1979). If, however, the law enforcement officers have knowledge of facts supporting a proper determination of probable cause, the warrant requirement may be eliminated when exigent circumstances requiring a prompt search exist. *State v. Barclay,* 398 A.2d 794 (Me.1979). Thus, probable cause and exigent circumstances justify the warrantless taking of a blood test. *Schmerber,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908.

■ The essence of probable cause is knowledge of facts constituting a reasonable ground for belief of guilt. *State v. Walker,* 341 A.2d 700, 703 (Me.1975); *State v. Smith,* 277 A.2d 481, 488 (Me.1971); *State v. Hawkins,* 261 A.2d 255, 261 (Me.1970). Information sufficient for a determination of the existence of probable cause includes that which would "entitle a reasonable and cautious man to believe that the search would disclose criminal conduct or items that would aid in identifying or establishing the commission of crime." *Walker,* 314 A.2d at 703; *State v. Smith,* 379 A.2d 722, 724 (Me.1977). The content of that standard is more specifically articulated in *Smith,* in which the Court states that probable cause to search exists when

the officers' personal knowledge of facts and circumstances, in combination with any reasonably trustworthy information conveyed to the police, would warrant a prudent person believing that the search would disclose criminal conduct or items that would aid in identifying a criminal or establishing the commission of a crime.

379 A.2d at 724.

In determining the existence of probable cause to search, the collective information of all of the officers involved in an investigation is considered. *United States v. Balsamo,* 468 F.Supp. 1363, 1380 n. 22 (D.Me.1979); *State v. Blais,* 416 A.2d 1253, 1256 (Me.1980).[3] The record must support by a preponderance of the evidence that the officers had knowledge of fact sufficient to justify the ultimate conclusion that probable cause existed. *Walker,* 341 A.2d at 703; *State v. Heald,* 314 A.2d 820 (Me.1973). The essence of the State's burden in justifying a warrantless taking of a blood sample for evidentiary purposes is, therefore, to prove by a preponderance of evidence the existence, on the facts known to the investigating police officials, of "reasonable grounds to believe," *State v. Fletcher,* 288 A.2d 92, 97 (Me.1972), that a crime has been committed; that the contemplated search would produce evidence pertinent to the resolution of the truth of that proposition, *Smith,* 379 A.2d at 725–26; and that

exigent circumstances exist requiring a prompt search without the delay that would be occasioned by obtaining a warrant. *Blais,* 416 A.2d at 1257;[4] *State v. Johnson,* 413 A.2d 931, 933 (Me.1980). Additionally, it is established "that more evidence is needed to justify an officer in making a search without a warrant than is required for finding probable cause for issuance of a search warrant."[5] *Fletcher,* 288 A.2d at 97; *Hawkins,* 261 A.2d at 261.

The suppression court initially made no finding of probable cause to believe that the defendant was operating a vehicle because it believed that the existence of probable cause was not in issue. When informed that this understanding was incorrect, it allowed the State to reopen the hearing on the probable cause issue, limited, however, to "only probable cause to believe he [defendant] was driving." In the initial ruling, the court stated that the existence of probable cause to believe that the defendant was under the influence of intoxicating substances had been proved: *"[t]he Doctor's testimony* makes it absolutely plain there is probable cause to believe he's [the defendant] under the influence." (Emphasis added.)

The only proof offered concerning the officers' knowledge at the scene was

---

**3.** This Court has held that in the case of probable cause *to arrest* the totality of such collective knowledge of the investigating officers need not be known to the officer who actually makes the arrest. *Smith,* 277 A.2d at 489. We have indicated in *dicta* that this rule may apply also in respect to probable cause *to search without a warrant. State v. Fletcher,* 288 A.2d 92, 97 (Me.1972).

**4.** The record at the suppression hearing indicates that the defendant did not challenge the existence of exigent circumstances for the taking of the blood sample. The record below contains no proof directed specifically to either the presence or the absence of an exigency justifying failure to obtain a warrant. The suppression justice did make a finding of the existence of exigent circumstances for the search; the defendant does not challenge that finding in this appeal. The issue of the existence of such exigency is, therefore, waived on appeal. It is necessary to take a blood sample before the passage of time decreases existing levels of

intoxicating substances in the blood; the delay occasioned by obtaining a search warrant could destroy the evidence. *Opinion of the Justices,* 255 A.2d 643, 651 (Me.1969) (citing *Schmerber,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908).

**5.** It is necessary to read this rule cautiously. It may require either (1) an increased quantum of proof of reasonable grounds to believe a crime has been committed or that a search will produce evidence on that question or (2) that in addition to proof of probable cause there must be proved to exist exigent circumstances justifying a prompt search. It appears that the first alternative states the rule. More proof is required for a warrantless search because the additional factor of a magistrate's disinterested determination, present in a warrant search, is lacking. *Johnson v. United States,* 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436, 440 (1948); *Rosencranz v. United States,* 356 F.2d 310, 314 (1st Cir.1966).

the testimony of Officer Ritchie after the State's reopening. The defendant challenges the decision to allow the State the opportunity to reopen. This procedure is within the sound discretion of the suppression justice. *State v. Barden,* 432 A.2d 404 (Me.1981); *see* Rule 57, M.R.Crim.P.; *State v. Nichols,* 325 A.2d 28, 33 (Me.1974). Based on the showing in the record of a serious disagreement between the prosecutor and defense counsel and between the court and counsel concerning whether any part of the probable cause question was in issue in the hearing, we cannot say that it was an abuse of discretion for the justice to allow the State to reopen on that issue.

This record clearly shows that during the suppression court's two articulations of the decision concerning probable cause to believe the defendant was under the influence of intoxicating substances, it relied *exclusively* on the testimony of the doctors and the nurses concerning events and observations at the hospital. Before the reopening of the hearing for Officer Ritchie's testimony, the court explicitly stated the exclusivity of this reliance: "[t]he doctors' testimony makes it absolutely plain there is probable cause to believe he's under the influence." The court cited no other evidentiary basis for this conclusion. The exclusivity of its reliance upon the testimony about events at the hospital is conclusively demonstrated by the fact that at that point, before reopening the hearing, there was no evidence in the record that was logically *relevant* to probable cause except the descriptions of events and observations occurring at the hospital.

 The purpose of a judicial determination of probable cause is to determine if facts *known to the law enforcement officers undertaking the search* were sufficient to create a reasonable belief that a crime had been committed and that the search of the suspect's body would produce evidence tending to establish that he committed the crime. The facts known to the officers are the exclusive factual predicate for judging the propriety of the decision of the officers to initiate the search without a warrant. At the time of the suppression justice's initial ruling on the issue of defendant's condition, it had before it only the evidence as to the events that had transpired at the hospital. None of the evidence about the events at the scene or the knowledge of the officers, derived from their observations at the scene, was in evidence until Officer Ritchie testified, after the reopening.

 The only officer present at the hospital was Officer Mueth, who had accompanied the defendant on the instructions of the Assistant District Attorney. Thus, to the extent that the initial finding is based *only* upon events occurring at the hospital, the finding must be premised on what *Mueth* knew of those events; we assume, without deciding, that probable cause could properly be found on the basis of information that became known to him subsequent to the prosecutor's decision at the scene to obtain the blood sample.[6] The evidence in the record proves only that Officer Mueth was at the hospital and that on one occasion he was present in an examination room with the defendant and the attending physician. There is no evidence as to what Mueth knew or observed or heard while at the hospital. It is clear that the doctor and the defendant were together in the examination room on more than one occasion. There is no evidence that Mueth was present when the defendant made the statements to the doctor. There is no evidence that Mueth made any observations in respect to the defendant's condition while at the hospital or that Mueth formed any conclusion concerning the defendant's condition.

The error of the suppression justice, in making the initial determination, was one of focus. The court explicitly focused on what the doctors and the nurses knew. Based on what they knew, it found probable

---

**6.** The record does not disclose the extent of Officer Mueth's knowledge, if any, of the events at the accident scene as testified to by Officer Ritchie after the reopening. In any event, it was not known at the time of the suppression justice's initial finding that Officer Mueth had even been at the accident scene.

cause as to the defendant's condition. The court wholly disregarded the essential next step of determining whether Mueth possessed that knowledge; he was the only officer who could have possessed such knowledge. If that step had been taken in the analysis, the suppression justice would have been compelled to conclude that the evidence did not show that the officer had knowledge of those facts transpiring at the hospital, which it believed to show the existence of probable cause in respect to the defendant's condition. Thus, the actual conclusion reached on that issue was the result of an inadequate and erroneous analysis. A proper analysis could not have reached, on the record as it then existed, a proper finding of probable cause as to defendant's condition. The initial finding was reached on an erroneous basis.

During the second statement of the court's decision concerning probable cause, after the State's reopening of the hearing and after the admission of Ritchie's testimony, the court articulated its final ruling as follows:

> THE COURT: I think there is certainly probable cause as to the operation and, based upon what I heard during the previous—*from previous witnesses about observations made at the hospital and apparent condition at the hospital,* I think there is also probable cause to believe *plus the statements of the Defendant at the hospital* which, although made to the Doctors, were made in the presence of officer, I gather, Mueth, there was probable cause to believe both that he was operating the motor vehicle and that he was under the influence; and, under the circumstances, the search was appropriate, and the motion will be denied.

(Emphasis added.)

The justice's finding of probable cause concerning the defendant's operation of the vehicle was clearly based on Officer Ritchie's testimony after the reopening because his testimony is the only testimony in the entire record of the suppression hearing bearing at all on that issue. Ritchie's testimony that within seconds of the collision, a witness at the scene and a State Police Trooper found the defendant seated in the maroon car behind the steering wheel adequately supports the finding concerning probable cause to believe that the defendant was operating the vehicle. So much of the testimony was clearly relevant to the issue of operation, which was the limited purpose of the reopening.

The suppression justice's conclusion that there was probable cause to believe the defendant was under the influence was, however, by the explicit terms of the suppression justice's second statement, based exclusively on (1) the testimony of "previous witnesses," which can only refer to witnesses other than Officer Ritchie; (2) the "observations made *at the hospital* and apparent condition *at the hospital*" (emphasis added); and (3) "the statements of the Defendant *at the hospital*" (emphasis added). It is thus clear that the suppression court simply adopted the finding with respect to the existence of probable cause as to the defendant's condition, which it had previously made, and that it did so based exclusively on the same evidentiary reasons on which it initially based that conclusion. In effect, therefore, the court did not conclude that the law enforcement officers had probable cause to initiate the search; rather, it determined that the doctors and nurses had probable cause to initiate the search. Clearly, such a determination is not required in the suppression proceeding. The end result of the suppression hearing was that no determination was ever made by the court that *the officers* had probable cause to initiate the search.[7]

7. It is certainly a distinct possibility that the suppression court may have deliberately elected not to consider, on the issue of defendant's condition, those portions of Officer Ritchie's testimony that were subject to exclusion as irrelevant to the issue of the defendant's operation of the vehicle because the court felt bound by the limitations it had placed on the court's reopening, namely, that the hearing was reopened to litigate only probable cause as to *defendant's operation of the vehicle.*

Similarly, it is manifest that the suppression justice, in reaching the determination of probable cause concerning the defendant's condition, never took into account any of the evidence as to the events that occurred at the scene and that, at the very least, would have made compelling contributions to a showing of probable cause on that issue. Absent any reliance upon that evidence and in the absence of any showing of the extent of Mueth's knowledge at the hospital, the determination of probable cause, ultimately reached by the suppression justice, was erroneous. That finding was, in fact, not a determination of the officer's probable cause at all; rather, it was a determination that the doctors and nurses had information sufficient to support a probable cause belief as to the defendant's condition. Because the motion to suppress was erroneously denied, the admission at the trial of the evidence sought to be suppressed thereby must necessarily constitute reversible error.[8]

### III. *The Trial Objection to the Blood Test Results*

The defendant filed a motion *in limine* to exclude the results of the blood test based on inadequate consent for the test and inadequate foundation for establishing the reliability of the test results. When the court denied the motion on the issue of consent, the issue of foundation remained pending. Thereafter, counsel and the court treated the issue of foundation as one of the admissibility of evidence at trial. On appeal, the defendant contends that the results of his test were erroneously admitted into evidence over his objection because the State failed to establish a foundation for the reliability of the test results. We treat this issue because it is likely to arise again in the event of re-trial of the defendant.

In *State v. Brewer,* 344 A.2d 54, 56 (Me.1975), we noted that the results of a blood test are usable as evidence of the condition of the person from whom the blood sample was taken if four requirements are met. The first requirement involves a sufficient foundation for the blood test. The manufacturer's certificate on a blood kit constitutes prima facie evidence that the contents of the kit are pure as opposed to adulterated. 344 A.2d at 56 n. 1; *State v. Rines,* 269 A.2d 9, 15 (Me.1970).

Because the physician obtained the syringe used to draw the defendant's blood from the emergency room and not from the standard blood kit, the manufacturer's certificate did not apply to the condition of the syringe used.[9] The State offered no testimony establishing that the syringe was sterile at the time the physician drew the defendant's blood. During defense counsel's voir dire examination of the analytical chemist on the issues of chain of custody and foundation for the test results, the chemist testified that he had no personal knowledge of the condition of the syringe when used and that he did not analyze the syringe for impurities. The chemist agreed that if there had been cocaine or benzoylecgonine on the hospital syringe before it was used, its presence would have been reflected in the test result. If that had occurred, the accuracy of the blood test result, in reflecting the defendant's condition, would certainly have been destroyed.

At the close of the voir dire examination, defense counsel renewed his objection concerning the admissibility of the chemist's testimony concerning the blood test results, based on inadequate foundation establishing the reliability of the results. The court overruled the objection and admitted the results of the defendant's blood test.

---

**8.** We have discussed this issue in the context of probable cause as a general concept because the parties and the suppression court so addressed the suppression issue. Properly analyzed, the issue for decision before the suppression justice after determining the existence of probable cause to believe the defendant had committed vehicular manslaughter (the defendant's operation of the vehicle plus the fact of an accident occurring while defendant's vehicle was on the wrong side of the road) was whether there also existed probable cause to believe that obtaining a blood sample would yield evidence relevant to the charge of vehicular manslaughter.

**9.** In fact, the State did not offer the blood kit or the manufacturer's certificate into evidence.

Under Rule 703, M.R.Evid., an expert may base an opinion on facts or data that are not admissible in evidence. Rule 705, M.R.Evid., however, provides:

Objection. An adverse party may object to the testimony of an expert on the ground that he does not have a sufficient basis for expressing an opinion. He may before the witness gives his opinion be allowed to conduct in the absence of the jury a voir dire examination directed to the underlying facts or data on which the opinion is based. If a prima facie case is made that the expert does not have sufficient basis for his opinion, the opinion is inadmissible unless the party offering the testimony first establishes the underlying facts or data.

The defendant adequately challenged the sufficiency of the basis of the chemist's testimony concerning the results of the blood test. We conclude that at the voir dire examination the defendant established a prima facie case that the chemist had insufficient facts and data on which to base his opinion concerning the reliability of, and the results of, the blood test due to a total lack of foundation establishing use of a sterile syringe.

The reliability that the trier of fact may ascribe to the preservation and analysis of a blood sample must be shown. *Rines,* 269 A.2d at 16. On this record, the results of the defendant's blood test were inadmissible and the erroneous admission of the blood test results constituted reversible error. *Brewer,* 344 A.2d at 56; Rule 103(a)(1), M.R.Evid.

We need not reach the issues raised by the defendant concerning the propriety of the trial justice's ruling on the motion *in limine* or concerning the admissibility at trial of statements made by the defendant to the doctor at the hospital.

The entry will be

Order denying Motion to Suppress vacated.

Judgment of conviction vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein, including a new evidentiary hearing on defendant's Motion to Suppress evidence, conducted by a justice other than that justice who heard the original Motion.

All concurring.