## DENDY *v.* STATE.

No. 39704 May 9, 1955 79 So. 2d 827

*J. M. Travis,* Heidelberg, for appellant.

*Wm. E. Cresswell,* Asst. Atty. Gen., Jackson, for appellee.

ETHRIDGE, J.

Appellant Bill Dendy was convicted in the County Court of Jones County of manslaughter, for the killing of Robert Maxwell Sanders by his culpable negligence in the operation of an automobile. Code of 1942, Sec. 2232. He was sentenced to pay a fine of $500 and to serve a jail term of ninety days. Appellant first contends that he was entitled to a peremptory instruction, and alternatively, that the verdict is against the great weight of the evidence.

On November 21, 1953, Robert Maxwell (Max) Sanders was riding in a 1952 Ford being driven by his son Bobby Sanders. They were on Highway 11, which runs north and south, about three miles north of Laurel, and were driving north toward their home in Sandersville. Also occupying the Sanders car was a Negro man named Claude Lindsey. The jury accepted the State's version of the evidence, which was substantiated by the testimony of four eye-witnesses. The Sanders car had just descended a large hill, going north at a rate of about fifty miles an hour. It began ascending a small hill, and was on its right or east side of the road. Driving south at the crest of this hill, coming toward the Sanders car, was a 1948 Mercury convertible occupied by Mr. and Mrs. Ed Perry and their child. Immediately to the rear of the Perry car was appellant's Pontiac. A yellow line, indicating no passing, was on the right side of the center line as Perry and Dendy were ascending the small hill going south.

As these two cars reached the crest of the hill, with the Perry car going about fifty miles an hour, appellant speeded up and pulled over on his left or east side of the road in an apparent attempt to pass the Perry car. As he speeded up to do so, he at that time saw the Sanders car coming north near the crest of the hill. Because of appellant's position on his left side of the road and because of his speed at that position, he was not able to cut behind the Perry car, back onto his right side. Bobby Sanders saw appellant's car when appellant, trying to pass, cut onto his side of the road, and pulled about half of his car, including both of the right wheels, off of the pavement and on the shoulder, and immediately slowed down to a speed of 25 miles or less. Sanders was trying to get out of the way of appellant's automobile. Nevertheless, appellant, on his wrong or left side of the road, being the east side of the highway, ran almost head-on into the Sanders car, near to and slightly south of the crest of the hill, hitting it at about the middle of the left front wheel. The middle of appellant's front bumper struck the Sanders car at that point. The point of impact was well over on the east side of the highway, which was the wrong side of the road for appellant to be occupying, and in fact the Sanders car was about half way off of the highway. As a result of the impact, the Sanders car was knocked entirely off the pavement and was turned facing the highway. Appellant's car rebounded from the collision back onto the west side of the road. Max Sanders was killed, and appellant has been convicted of manslaughter for his culpable negligence in causing that death.

The great weight of the evidence supported the State's version of the killing. Bobby Sanders, the deceased's son who was driving his car, and Claude Lindsey, an occupant of the car, both testified to the above stated facts. Mr. and Mrs. Ed Perry, who were in the Mercury convertible immediately ahead of appellant, also testified to the same effect. And Jack Anderson, Mississippi Highway

Patrolman, who arrived at the scene shortly after the collision, testified in considerable detail concerning the physical facts. His testimony thoroughly corroborated that of the four eye-witnesses for the State.

Appellant and Earl Parker, who was an occupant of his automobile, testified for the defense. Appellant claimed that he was following a transfer truck, and that when he got past the yellow line on the crest of the hill, he started to pass the truck, saw the Sanders car coming toward him, and pulled back behind the truck. He then stepped on his brakes to slow down, and the brake on his left front wheel locked and jerked him back across the highway into the path of the Sanders car. The State's witnesses heard no tires skidding and saw no skid marks on the pavement. The four eye-witnesses for the State said that they saw no truck ahead of appellant, and that Perry's Mercury car was ahead of appellant. Dendy stated that he was driving about forty miles an hour, but if the State's witnesses were telling the truth, that was not possible. Appellant's witness Parker attempted to confirm appellant's testimony. However, he said that the wreck or collision happened on the west or Dendy's side of the road, and this is in conflict with the testimony of Dendy himself and all of the physical facts.

 The great weight of the evidence amply supports the jury's verdict and the conclusion that appellant, recklessly and with a willful and wanton disregard of the safety of others and of human life, attempted at a high rate of speed to pass the Perry car at the crest of the hill, before he could see where he was going, or who was coming toward him; and that as a direct result of appellant's culpable negligence in these respects Mr. Sanders was killed. Smith v. State, 197 Miss. 802, 20 So. 2d 701 (1945); Coleman v. State, 208 Miss. 612, 45 So. 2d 240 (1950); Sullivan v. State, 213 Miss. 14, 56 So. 2d 93 (1952).

 Appellant also complains of an amendment of the indictment which was made by the State at a trial

in an earlier court term, in which there was a mistrial. The indictment charged that appellant "did unlawfully, feloniously and by the culpable negligence of the said defendant, kill and slay one Robert Maxwell Sanders, a human being, contrary to Section 2220 of the Mississippi Code of 1942, and against the peace and dignity of the State of Mississippi." The amendment changed the section number from "2220" to "2232." The latter section was the correct statute. However, we think that the reference to the code section in the indictment was surplusage and unnecessary to the charge of the crime for which appellant was tried. The balance of the indictment adequately charges the proper offense under Sec. 2232. Code Sec. 2446 states: "The words 'force and arms' or the words 'contrary to the form of the statute,' or any other merely formal or technical words, shall not be necessary in an indictment if, without them, the offense be certainly and substantially described." Here the offense was "certainly and substantially described." Code Sec. 2454 provides, "It shall be sufficient, in an indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased, concluding in all cases as required by the Constitution." Manifestly there was a clerical mistake in the citation appearing in the indictment prior to its amendment. These statutes were intended to apply to a situation of this type. █ Appellant had ample and sufficient notice of the offense with which he was charged. There is no merit in the other assignments of error argued by appellant.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.