**STATE of Maine**

v.

**Charles L. BREWER.**

Supreme Judicial Court of Maine.

Sept. 10, 1975.

---

,John H. Fallon, Waldo County Atty., Searsport, for plaintiff.

Richard W. Elliott, Boothbay Harbor, John J. Lynch, Damariscotta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD and DELAHANTY, JJ.

POMEROY, Justice.

The admission into evidence of the result of a blood-alcohol test is claimed as revers-ible error in this appeal from a judgment entered on a jury verdict of guilty of the offense of attempting to operate a motor vehicle while under the influence of intoxicating liquor. 29 M.R.S.A. § 1312.

We sustain the appeal.

The State argues that the appellant has not preserved the point he makes on appeal.

An examination of the record reveals that a long discussion took place at sidebar, out of the hearing of the jury, concerning whether or not the result of the blood-alcohol test was admissible. Appellant plainly and unmistakably made known to the Court his claim that no sufficient foundation had been laid for the admission of such test result.

Later, when the chemist was asked in the presence of the jury concerning the test result, appellant stated that he objected "for the record."

The chemist called by the State, whose qualifications as a chemist were stipulated, described in detail the manner in which he conducted the test to determine the alcoholic content of the blood which he tested.

He was asked this question:

"Q. Can you describe the condition of the receptacle or receptacles in which this specimen was contained when you received it from Trooper Pierson?

A. Yes, I can. It was a styrofoam box about that square and maybe that thick, and it's a standard blood alcohol collection kit produced by Becton & Dickinson, which supply these kits to Health and Welfare for distribution to the law enforcement agencies.

Q. Now,—

A. This particular kit had writing on the outside, the name of the defendant, information about the time

the test was taken. It was sealed with these paper seals and the seals were intact. There was some information inside the box, after I broke the seals and opened it, there was some information inside the box also pertaining to the case. In addition, there was a tube which contained blood, and I wrote this number, 18001, on the outside of the box and also on the tube itself."

There was testimony by the chemist that the "standard blood alcohol collection kit" produced by Becton & Dickinson, when received by the Department of Health & Welfare for distribution, contained an antiseptic swab and the blood collection tube contained an anticoagulant.

These things, he says, he knows because "The label on the kit says what's in the kit."

The chemist then continued

"These two substances are used as an anticoagulant and as a preservative, and they do not affect the alcohol concentration of the sample.

Q. How about the antiseptic swab? Have we covered that when we talked about the zephiran?

A. Well, it's in an aqueous solution. I have personally checked these various swabs and there's no alcohol in the swab. There is water, and as I testified earlier, the benzalkonium chloride or zephiran is not alcohol and it wouldn't interfere with the test."

The manufacturer's "certificate" as to the quality of the coagulant and the disinfectant was never produced and offered in evidence, if, in fact, it existed.

■ In *State v. Rines*, Me., 269 A.2d 9 (1970), we pointed out that the results of a scientific testing to determine the alcoholic content by volume of a blood sample is useable as evidence of the condition of the person from whom the blood sample was taken at that time, citing 29 M.R.S.A. § 1312, but

(1) before such evidence is admissible a sufficient foundation must be shown;[1]

(2) the person conducting the chemical test must be qualified to make such analysis;

(3) the ingredients used in the testing must be of appropriate quality;

(4) it is necessary to explain to the jury the functions of the various chemicals used in the test whereby the reliability of the ultimate analysis may be determined.

■ In the case now before us there was no evidence either in the form of a certificate or otherwise, as to the *quality* of the drugs in the kit. This being so, no sufficient foundation for the admission into evidence of the blood test results had been laid.

On this record, then, the erroneous admission of such result into evidence constituted reversible error.

The entry must be,

Appeal sustained. New trial ordered.

All Justices concurring.

---

1. We said in that case that the manufacturer's "certificate" attached to the interior of the box containing the kit constitutes prima facie evidence on the quality of the drugs mentioned in the sense of their being pure as distinct from adulterated. However, "the certificate," we said, "does not constitute prima facie evidence of the *characteristics* or *attributes* of the drugs . . . ."