406 So.2d 816 (1981)
Kenneth GOLDMAN
v.
STATE of Mississippi.
No. 52960.
Supreme Court of Mississippi.
December 9, 1981.
*817 Watts & Bilbo, Pat H. Watts, Jr., Pascagoula, for appellant.
Bill Allain, Atty. Gen., by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and SUGG and LEE, JJ.
LEE, Justice, for the Court:
Kenneth Goldman was convicted in the Circuit Court of Jackson County, Honorable Robert T. Mills, presiding, on a charge of manslaughter by culpable negligence in the operation of an automobile, was sentenced to a term of five years with the Mississippi Department of Corrections, and, on this appeal, has assigned two errors in the trial below.

I.
The appellant first contends that the prosecution failed to prove the elements of manslaughter by culpable negligence and that the verdict of the jury was contrary to the law and the overwhelming weight of the evidence.
The evidence favorable to the state reflects that on the morning of April 24, 1979, appellant awakened at approximately 5:00 a.m., prepared lunch, and left home for work in his four-wheel-drive pickup truck at approximately 5:45 a.m. He was proceeding along his usual route in a southerly direction on Mississippi Highway 613, which is a black-topped two-lane highway running generally north and south. On that morning, Gary Coleman, Richard Cochran and Sandra Crane (the deceased) were proceeding in a northerly direction on Mississippi Highway 613 and were going to pick up another friend for their senior trip to Gulf Shores. Sandra Crane was sitting on the passenger side of the front seat, Richard Cochran was sitting on the back seat and Gary Coleman was driving the automobile, a 1978 gray Plymouth.
About one-tenth mile south of Big Point, Mississippi, Highway 613 inclines to the south and a solid yellow line is painted on the right center of the highway, indicating that vehicles traveling south may not cross into the east (northbound) lane of the highway. About 6:15 a.m., shortly before reaching the beginning of the incline and the solid yellow line, appellant overtook and passed a vehicle driven by Eva Roberts, *818 drove back into the southbound lane, and, approximately one hundred yards ahead of the Roberts vehicle, started to pass a pickup truck driven by Robert Cook. In doing so, appellant drove his truck around the Cook vehicle, crossed the solid yellow line and was driving in the northbound lane. His truck was about even with the cab of the Cook pickup truck when the car in which Sandra Crane was riding came over the hill crest, proceeding north in the east lane of the highway. Appellant applied his brakes, and, at the same time, Cook braked his own vehicle, trying to avoid the impending collision. Appellant drove off the pavement on the east shoulder of the highway and, in the emergency, Gary Coleman, driver of the Sandra Crane car, also drove over on the east shoulder. The vehicles collided and Sandra Crane was fatally injured, expiring at the scene. The weather was partly cloudy but fair, lighting was good and visibility was not hampered.
Cecil Roberts testified to the following:
Q. I want you to tell this jury just exactly what you saw that morning.
A. Well, it was, I would say about 6:15 in the morning, and we was, I would say, approximately 100 yards behind the truck, and it started to go around another truck on a grade, and he couldn't see over the hill, over the grade, and then another car was coming from the other way, and there was a collision.
* * * * * *
A. Well, that's all right. We were coming south on 613, and the truck went around us before we got to the grade, and then he pulled back in, there was another truck, and then we got to the grade right along here, he pulled out before he could see where he was going over the top of the hill, and the other car was coming north, and they had the head-on collision.
* * * * * *
Q. Do you have an opinion as to the possible speed of that truck that passed you, Mr. Roberts?
A. 60.
* * * * * *
Q. And, Mr. Goldman's truck. Now when Mr. Goldman attempted to pass Mr. Cook, did he have to cross over this yellow line?
A. Yes sir. He had to do that, because he was right on the grade, and he couldn't see ahead where he was going, so he had the truck over the line, because he was on the left-hand side of the road.
Robert Cook testified:
A. About the time he got beside me, I saw the car coming over the hill, and I hit my brakes, and his front fender was beside my door at that time, and he hit his brakes, and I started trying to get off the road. When I finally got an opportunity to get all the way off the road, I got off, and I looked back, and they had the collision.
* * * * * *
Q. All right. Here is my question. How fast was Mr. Goldman going in his truck when he tried to pass you, your opinion now?
A. Well, when I looked in my rear view mirror, he was coming up on me pretty fast. So, I would say 70, 75, somewhere around in there, because he was coming up on me pretty fast.
Q. Well, let me ask you this. Did he have to cross the yellow line to pass you?
A. I believe he came out before the yellow line started, but he was beside me whenever I started through the yellow line.
Appellant admits he crossed the yellow line but he thought he could see over the crest of the hill, since his pickup truck was higher than the normal vehicle. Appellant testified he was going fifty to fifty-five miles per hour and that, although his actions constituted simple negligence, he was not guilty of culpable negligence.
The case of Dendy v. State, 224 Miss. 208, 79 So.2d 827 (1955), has facts similar to the case sub judice. They follow:
On November 21, 1953, Robert Maxwell (Max) Sanders was riding in a 1952 Ford being driven by his son Bobby Sanders. They were on Highway 11, which runs *819 north and south, about three miles north of Laurel, and were driving north toward their home in Sandersville. Also occupying the Sanders car was a Negro man named Claude Lindsey. The jury accepted the State's version of the evidence, which was substantiated by the testimony of four eye-witnesses. The Sanders car had just descended a large hill, going north at a rate of about fifty miles an hour. It began ascending a small hill, and was on its right or east side of the road. Driving south at the crest of this hill, coming toward the Sanders car, was a 1948 Mercury convertible occupied by Mr. and Mrs. Ed Perry and their child. Immediately to the rear of the Perry car was appellant's Pontiac. A yellow line, indicating no passing, was on the right side of the center line as Perry and Dendy were ascending the small hill going south.
As these two cars reached the crest of the hill, with the Perry car going about fifty miles an hour, appellant speeded up and pulled over on his left or east side of the road in an apparent attempt to pass the Perry car. As he speeded up to do so, he at that time saw the Sanders car coming north near the crest of the hill. Because of appellant's position on his left side of the road and because of his speed at that position, he was not able to cut behind the Perry car, back onto his right side. Bobby Sanders saw appellant's car when appellant, trying to pass, cut onto his side of the road, and pulled about half of his car, including both of the right wheels, off of the pavement and on the shoulder, and immediately slowed down to a speed of 25 miles or less. Sanders was trying to get out of the way of appellant's automobile. Nevertheless, appellant, on his wrong or left side of the road, being the east side of the highway, ran almost head-on into the Sanders car, near to and slightly south of the crest of the hill, hitting it at about the middle of the left front wheel. The middle of appellant's front bumper struck the Sanders car at that point. The point of impact was well over on the east side of the highway, which was the wrong side of the road for appellant to be occupying, and in fact the Sanders car was about half way off of the highway. As a result of the impact, the Sanders car was knocked entirely off the pavement and was turned facing the highway. Appellant's car rebounded from the collision back onto the west side of the road. Max Sanders was killed, and appellant has been convicted of manslaughter for his culpable negligence in causing that death. (224 Miss. at 210-211, 79 So.2d at 827-828)
* * * * * *
The great weight of the evidence amply supports the jury's verdict and the conclusion that appellant, recklessly and with a willful and wanton disregard of the safety of others and of human life, attempted at a high rate of speed to pass the Perry car at the crest of the hill, before he could see where he was going, or who was coming toward him; and that as a direct result of appellant's culpable negligence in these respects Mr. Sanders was killed. Smith v. State, 197 Miss. 802, 20 So.2d 701 (1945); Coleman v. State, 208 Miss. 612, 45 So.2d 240 (1950); Sullivan v. State, 213 Miss. 14, 56 So.2d 93 (1952).
(224 Miss. at 212, 79 So.2d at 828-829)
We recognize that this Court has construed culpable negligence to mean negligence evincing a reckless disregard for the value of human life and that each case must be considered on its own facts. Gandy v. State, 373 So.2d 1042 (Miss. 1979); Lester v. State, 209 Miss. 171, 46 So.2d 109 (1950), Cutshall v. State, 191 Miss. 764, 4 So.2d 289 (1941). Under the established principle of criminal law, in considering motions for directed verdicts, requests for peremptory instructions of not guilty and contentions that the jury verdict is against the overwhelming weight of the evidence, we must consider as true all testimony offered by the prosecution, together with reasonable inferences, and if that evidence will support a verdict of guilty, the question is for the *820 jury to determine. Warn v. State, 349 So.2d 1055 (Miss. 1977). In carefully reviewing the evidence in this case, and in applying that principle, we conclude that, upon such evidence, there was a guilt issue for the jury to determine, and that the verdict of the jury is supported by the evidence.

II.
Appellant next contends that the lower court erred by admitting into evidence the verdict of the coroner's inquest to establish the corpus delicti.
The coroner testified that he viewed the body of Miss Crane and that, in his opinion, she died from internal injuries. Although he was permitted to testify about the procedure in the coroner's inquest, no verdict or documentary evidence was offered by the state, as in Blackwell v. State, 166 Miss. 524, 146 So. 628 (1933), Death of a victim and criminal agency may be established by circumstantial evidence and by reasonable inferences to be drawn from such evidence. Elliott v. State, 183 So.2d 805 (Miss. 1966); King v. State, 251 Miss. 161, 168 So.2d 637 (1964).
In the case sub judice, Miss Crane, a young woman in her late teens, whom the record does not show suffered from any physical or mental impairment and who was beginning an outing with friends to Gulf Shores, Alabama, was riding on the right front seat of the vehicle which collided with appellant's truck. Physical evidence and photographs of the vehicles after the collision indicate that there was a terrific impact and that the right front side and passenger area of the vehicle were demolished. Immediately after the tragic accident, persons checked and viewed the body. They testified that Miss Crane's body was jerking, blood was running from her mouth, glass covered her face, she had quit breathing, and efforts by the ambulance attendants failed to revive her. The circumstantial evidence and inferences overwhelmingly established the cause of death resulted from the automobile collision and, if error was committed in the testimony of the coroner, which we do not decide, the same was harmless.
There being no reversible error in the record, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.