ROY NOBLE LEE, Presiding Justice,
for the Court:
Janyce McClinton was indicted, tried and convicted in the Circuit Court of the First Judicial District, Hinds County, Mississippi, for embezzling $3,491.01 from the University Medical Center. The lower court sentenced her to ten (10) years in custody of the Mississippi Department of Corrections with five (5) years suspended, and McClin-ton has appealed to this Court assigning five (5) errors in the trial below.
I.
DID THE LOWER COURT ERR IN OVERRULING APPELLANT’S MOTION FOR A DIRECTED VERDICT?
The University Medical Center began receiving complaints from patients covering the period June 25, 1981, to August 10, 1981, that payments they had mailed to the Medical Center had not been credited to their accounts, even though the patients had their cancelled checks evidencing such payments. As a result, Linda Ferguson, a senior internal auditor, who audited (and supervised audits) financial areas of the University Medical Center, was contacted and requested to make an audit of the finances during that period. She testified that the patients’ accounts office at the Medical Center is a central collection agency, which receives money from people checking out of the hospital, money that people pay over a period of time and mail in, money from the cafeterias, pharmacies and ambulance services. Employees designated as cashiers receive such moneys, checks are stamped and the amount of funds received by each cashier is then delivered to a deposit clerk,[1] who makes one deposit for all the cashiers. (Three cashiers in number)
The evidence for the State reflects that between June 25 to August 10, 1981, there were twenty-seven (27) questionable transactions involving $3,491.01 spread out over a period of fourteen (14) days; that the amount delivered by the cashiers to the deposit clerk was the exact amount deposited by the deposit clerk to the Medical Center’s account; that the amount of funds missing was identical with the amount of funds not credited to the account of certain patients; appellant acted as cashier and as deposit clerk during the questionable period, and she was the only one who served in such positions on the same occasions; that a person would have to serve in a dual capacity such as appellant did in order to divert the funds in the manner that occurred.
During the period in question, appellant began to live in a more affluent lifestyle and she appeared nervous and distraught. Subsequent to the investigation, she accused another person in the office with the statement that she was going to take somebody else with her.
In passing on motions for directed verdicts and requests for peremptory instructions of not guilty, all evidence on behalf of the State is taken as true, together with reasonable inferences that may be drawn therefrom, and, if there is sufficient evidence to support a verdict of guilty, the motion for directed verdict must be overruled and the peremptory instruction must be denied.
Wilks v. State, 408 So.2d 68 (Miss.1981); Taylor v. State, 398 So.2d 1341 (Miss.1981); Goldman v. State, 406 So.2d 816 (Miss.1981); Warn v. State, 349 So.2d 1055 (Miss.1977).
Although the evidence was largely circumstantial, we are of the opinion that, under the rule expressed above, the lower court did not err in overruling the motion for directed verdict of not guilty.
*809 II.
DID THE LOWER COURT ERR IN ALLOWING THE STATE TO IMPEACH THE APPELLANT ON AN IMMATERIAL MATTER?
During the investigation, appellant told the investigator that one Laura Wright had taken $100.00 of funds coming into the cashiers’ hands. On cross-examination, she was asked why she made the untrue statement about Wright and appellant said that she did not lie. The State, in rebuttal, called Alvin Shavers, the investigator, who testified that he could find no evidence of Wright’s having taken the money. Appellant complains that she was being impeached on an immaterial matter. However, no objection was made, and the matter was not preserved for decision on this appeal.
III.
DID THE LOWER COURT ERR IN ADMITTING INTO EVIDENCE EXHIBIT 1 WHICH WAS THE AUDITOR’S TYPED LIST OF CHECKS ALLEGEDLY RECEIVED BY THE MEDICAL CENTER THAT HAD NOT BEEN TIMELY CREDITED TO PATIENTS’ ACCOUNTS?
The auditor listed and identified the checks involved in the charge against appellant. All the original checks were not introduced, because a great deal of time would have been required to obtain those original checks and present them. The hospital had copies of the checks, which were all identified by the accountant, and proved. One check in the amount of $441.02 was used as an example and pattern of all the other checks and was specifically used by the accountant.
The checks were sufficiently proved by the list and copies and there is no merit in this assignment. Williams v. State, 386 So.2d 588 (Fla.1980); Jones v. State, 360 So.2d 1293 (Fla.1978).
IV.
DID THE LOWER COURT ERR IN FAILING TO SUSTAIN APPELLANT’S MOTION FOR MISTRIAL AFTER THE TESTIMONY THAT THE PROSECUTING WITNESS, LAURA WRIGHT, WAS GIVEN A POLYGRAPH EXAMINATION?
It is reversible error to show that a polygraph test was administered to a defendant, and, in at least one case, it was held error to ask the question.
In the present case, on cross-examination, Alvin Shavers, the investigator, denied he did anything additional in investigating the case with reference to Laura Wright. He had previously stated that he found nothing connecting her with the missing funds. He then stated that he had given her a polygraph test. The results were not disclosed. The appellant objected on the ground that it was an attempt to bolster the testimony of Laura Wright.
The lower court overruled the objection and asked appellant’s attorney whether or not he desired the court to instruct the jury to disregard the statement. The attorney answered in the affirmative, and the court so instructed the jury. Therefore, in our opinion, the error was cured. Edwards v. State, 413 So.2d 1007 (Miss.1982).
V.
DID THE LOWER COURT ERR IN PERMITTING THE AUDITOR TO GIVE AN OPINION AS TO THE GUILT OF THE DEFENDANT?
On direct examination, the witness, auditor Linda Ferguson, made the following responses to questions:
Q. All right. Now, did you check the attendance records for the employees of the Patient Accounts Department during that period of time?
A. Yes.
Q. And was Janyce McClinton present on every single one of those days in which a questionable transaction occurred, Ms. Ferguson?
*810 A. Yes.
Q. In your opinion as an Accountant, in what employment position at the Patient Accounts office at the University Medical Center did the discrepancy take place — where was the money removed?
A. It was removed by the person who made up the deposit.
Q. And is that the Deposit Clerk?
A. Yes.
Q. Is that Janyce McClinton?
A. Yes.
The appellant’s attorney did not make a specific objection to the above examination and the question was not preserved.[2] Norman v. State, 302 So.2d 254 (Miss.1974); Stringer v. State, 279 So.2d 156 (Miss.1973).
It is elementary that a witness may not give his own opinion as to the guilt or innocence of a person. However, the testimony of Ms. Ferguson previous to the punch line answer was equivalent to the fact that appellant converted the money. There was no prejudice to the appellant, and there is no merit in this assignment.
The judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER, P.J., and BOWLING, HAWKINS, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE, J., not participating.

. Monies received from patients, either in cash or checks from the mail during this process are registered on a computer and credited to the patients’ accounts before delivery to the deposit clerk.

. Appellant’s attorney on this appeal did not participate in the lower court trial.