GRIFFIN, Justice,
for the Court:
This case, concerning manslaughter, comes to the Court from the Circuit Court of Rankin County. There, a jury convicted the appellant, Kevin Neal Gibson, who then received a sentence of eight years. On appeal, Gibson contends that the lower court erred when it failed to grant him a directed verdict as well as when it admitted into evidence the results of a blood test for alcohol. We affirm.
On September 19, 1981, at approximately 1:45 A.M., Danny Ray Alford was a passenger in a van, travelling on Interstate 20 East, near the Jackson Municipal Airport exit. Having just passed a man standing next to a four-wheel drive truck, parked on the highway’s shoulder, Alford looked in a side mirror, witnessing a “car gradually easing off the road with the lights up,” and then a collision. At trial, Alford stated, “I know that something went up [in the air] and by the time we got stopped and backed up, the man was laying on the side of the intersection,” later found to be thirty-seven feet, six inches from the point of impact. Alford and the van’s driver, smelling gasoline, then began searching for the second *232 vehicle, finding it in a nearby ditch. They removed its only occupant, Kevin Neal Gibson.
Immediately thereafter, Officer Bill F. Talley of the Pearl Police Department arrived at the scene. He found Gibson, “hollering, cussing, trying to get up off the ground and the paramedics were trying to keep him on the ground, trying to attend his wounds.” At this point, Talley noticed the odor of alcohol on Gibson’s breath. Calling for a blood collection kit from headquarters, Talley followed the ambulance, carrying Gibson, to the University Medical Center in order to obtain a blood sample for analysis.
At the hospital, Talley first noticed that the kit was beyond its expiration date. He then discarded the vials, contained in the kit, allowing emergency room nurse Martha Monaghan to use the hospital’s own vials for the collection. The respective expiration dates of the two replacement vials used for the sample were November, 1982, and January, 1983.
Thereafter, the vials were sealed in the kit's styrofoam box, and delivered to Officer Thomas Seth Laird, also of the Pearl Police Department. He stored the evidence over the weekend in his home’s refrigerator, tendering it to the Mississippi Crime Laboratory the following Monday. Analysis showed a blood alcohol content of .19%.
In Gibson v. State, 458 So.2d 1046, 1047 (Miss.1984), this Court reversed the appellant’s initial conviction, finding that the “State [had] failed to lay a proper foundation for the admission into evidence of the results of the blood alcohol test.” Specifically, we referred to the expiration date, 12 80, appearing on the styrofoam box, the previous record silent as to the presence of replacement vials, contained therein. This appeal then follows the remand and a second conviction. Significantly, the District Attorney, attentive to our first decision, introduced evidence of the replacement vials at the second trial, showing the jury that the expired kit’s contents had no effect on the results of the blood test.
I.
Gibson argues that the trial judge erred when he failed to grant a directed verdict, maintaining there is no credible evidence to support a conviction for manslaughter. In particular, he notes the state’s failure to prove (1) any physical contact between the two vehicles, (2) the cause of death, and (3) the appellant’s negligence.
Consistently, this Court has stated that in passing on a motion for a directed verdict, all of the evidence on behalf of the state must be taken as true, together with any reasonable inferences, and, if there is sufficient evidence to support a verdict of guilty, the motion for a directed verdict must be overruled. Harper v. State, 463 So.2d 1036, 1040 (Miss.1985); Thompson v. State, 457 So.2d 953, 955 (Miss.1984); Shelton v. State, 445 So.2d 844, 848 (Miss.1984); Jackson v. State, 440 So.2d 307, 310 (Miss. 1983); Forbes v. State, 437 So.2d 59, 60 (Miss.1983); Bayse v. State, 420 So.2d 1050, 1054 (Miss.1982); Wilks v. State, 408 So.2d 68, 70 (Miss.1981); Bullock v. State, 391 So.2d 601, 606 (Miss.1980).
At trial, Alford testified that he had witnessed a collision between a vehicle “easing off the road” and a four-wheel drive truck, parked on the asphalt shoulder. He added that no other vehicle passed the accident scene between the time of the collision and his search for Gibson’s automobile, prompted by the smell of gasoline. Both vehicles displayed extensive physical damage, with tire tracks, and debris, evident from the alleged point of impact to the resting places of the automobile and truck, 520 feet and 514 feet, respectively. Certainly, this was sufficient to show physical contact between the vehicles.
Gibson also argues that an autopsy is the “only sure means” to determine the cause of death. Its absence then required the trial judge to find for Gibson, as there was no evidence of criminal agency. Yet, in King v. State, 251 Miss. 161, 176, 168 So.2d 637, 643 (1964), the Court stated,
The law does not require an autopsy or medical evidence to establish death. These facts are ordinarily proved by witnesses who saw the deceased after his *233 death and who testified that the deceased was dead. The criminal agency or cause of death is usually shown by witnesses who saw the homicide, or by circumstances sufficient to establish the crime to the exclusion of every other reasonable hypothesis.
See also, Miskelley v. State, 480 So.2d 1104, 1107 (Miss.1985); Ford v. State, 226 So.2d 878, 380 (Miss.1969). Likewise, in Goldman v. State, 406 So.2d 816, 820 (Miss.1981), the Court said, “Death of a victim and criminal agency may be established by circumstantial evidence and by reasonable inferences to be drawn from such evidence.” Williams v. State, 434 So.2d 1340, 1343 (Miss.1983); McCraw v. State, 260 So.2d 457, 461 (Miss.1972).
Here, Jimmy L. Roberts, Rankin County Coroner, testified that he removed the decedent to a local funeral home for examination, and based on his observations, the “immediate cause of death was head injuries.” Additionally, the four-wheel drive truck sustained rear-end damage, immediately following Alford’s pass, during which he saw the decedent, standing near the driver’s door. Indeed, the victim’s presence, thirty-seven feet from the point of impact is in line with Alford’s observation that someone or something was hurled into the air by the force of the collision. With no other facts on which to base an alternative “reasonable hypothesis,” the circumstances of the wreck are sufficient to provide the cause of death.
Lastly, Gibson contends that the State failed to prove his negligence as the cause of the accident, as required by Miss. Code Ann. § 97-3-47 (1972). This Court has previously defined culpable negligence in vehicular manslaughter cases as “negligence demonstrating a reckless disregard for the value of human life....” McGrew v. State, 469 So.2d 95, 96 (Miss.1985). See also, Burge v. State, 472 So.2d 392, 395 (Miss.1985); Goldman v. State, 406 So.2d 816, 819 (Miss.1981); Gandy v. State, 373 So.2d 1042, 1046 (Miss.1979); Howard v. State, 346 So.2d 918, 921 (Miss.1977). Although the driver’s intoxication, by itself, is insufficient to warrant a conviction for manslaughter, Dickerson v. State, 441 So.2d 536, 540 (Miss.1983), “it may be considered as an element constituting gross and careless disregard for the value of human life.” McGrew, 469 So.2d at 97. Yet, “in order for the influence of intoxicating liquors to be a factor in showing criminally culpable negligence it must contribute proximately both to the establishment of such negligence and to the resultant death.” Cutshall v. State, 191 Miss. 764, 772, 4 So.2d 289, 292 (1941). See also, Gandy v. State, 355 So.2d 1096, 1098 (Miss. 1978); McNamee v. State, 313 So.2d 392, 395 (Miss.1975); Frazier v. State, 289 So.2d 690, 692 (Miss.1974). For example, in Gandy, 355 So.2d at 1098, this Court found a causal connection between the defendant’s intoxication and his head-on collision with another vehicle, when he travelled in the wrong lane of traffic. Accord, Yazzie v. State, 366 So.2d 240, 243 (Miss.1979).
The case at issue is quite similar. Here, there was unrefuted testimony that the decedent’s vehicle, wholly off the highway and displaying its taillights, was struck at its rear by Gibson’s automobile, which had eased off the road along a straight and level stretch of Interstate 20. Moreover, Gibson smelled of alcohol, slurred his speech, and evidenced a .19% level of blood alcohol. Based upon the above, this was sufficient to establish Gibson’s culpable negligence for the jury.
II.
Gibson contends that the trial court erred when it admitted the results of his blood test for alcohol, charging that (1) absent his arrest or consent, the blood sample constituted an unreasonable search and seizure, (2) the sample’s established chain of custody was insufficient, and (3) the State . failed to lay the proper foundation for the test results, thereby barring their introduction into evidence.
In two previous cases, this Court has permitted the collection of a blood sample, absent a suspect’s arrest or consent, where there existed at the time of the seizure probable cause to make a search. *234 In Ashley v. State, 423 So.2d 1311, 1313 (Miss.1982), the Court stated,
The facts in possession of the officer at that time were that Ashley was driving an automobile which had run into the rear end of another automobile which was stopped at a traffic signal, that an occupant of the stopped automobile had been killed in the accident, and in the opinion of the officer appellant was intoxicated. Under these facts the officer could then have arrested appellant on a charge of manslaughter and required appellant to submit to a test to determine the alcoholic content of his blood. At that time there existed probable cause for arrest and also probable cause to search appellant by requiring him to submit to the withdrawal of blood from his body to be tested.
See also, Cole v. State, 493 So.2d 1333, 1335 (Miss.1986).
At the time of Officer Talley’s search, he knew that Gibson displayed symptoms of intoxication, immediately following his involvement in a fatal accident, where Gibson’s automobile had apparently struck the rear of the decedent’s truck, parked on the highway’s asphalt shoulder. This gave Talley probable cause to conduct his search for and seizure of evidence to show the crime of manslaughter.
As for his contention that there were “serious problems” with the chain of custody, Gibson points to Nurse Monoghan’s inability to recall her collection of the blood sample, as well as hospital records concerning the extraction, which failed to include Monoghan’s handwriting or signature. Additionally, he objects to the sample’s weekend stay in Officer Laird’s refrigerator.
In Grady v. State, 274 So.2d 141, 143 (Miss.1973), this Court said that the test for the continuous possession of evidence is “whether or not there is any indication or reasonable inference of probable tampering with the evidence or substitution of the evidence.” See also, Barnette v. State, 478 So.2d 800, 804 (Miss.1985); Lambert v. State, 462 So.2d 308, 312 (Miss.1984); Johnston v. State, 376 So.2d 1343, 1346 (Miss. 1979); Jones v. State, 367 So.2d 458, 460 (Miss.1979); Harrison v. State, 307 So.2d 557, 561 (Miss.1975); Lindsey v. State, 279 So.2d 913, 915 (Miss.1973); McCormick v. State, 279 So.2d 596, 598 (Miss.1973). Any question as to the chain of possession is within the sound discretion of the trial judge, and, absent abuse resulting in prejudice to the defendant, his decision will stand on appeal. Wright v. State, 236 So.2d 408, 409 (Miss.1970). See also, Morris v. State, 436 So.2d 1381, 1388 (Miss. 1983); Nixon v. State, 336 So.2d 742, 744 (Miss.1976); Clanton v. State, 279 So.2d 599, 601 (Miss.1973); Nix v. State, 276 So.2d 652, 653 (Miss.1973).
Although Monoghan had no recollection of the events surrounding the morning of September 19, Officer Talley testified that he witnessed Monoghan draw the blood, giving the vials to another nurse, who then presented them to him. Putting the sample in the kit’s styrofoam container, Talley sealed it, placing it in the kit’s outer box, which bore the expiration date “12 80.”
Talley was unable though to identify the author of the hospital's records. Yet, in light of his testimony, the trial judge certainly acted within his discretion, when allowing the sample’s introduction. Indeed, at the suppression hearing, Monoghan herself stated that it was a regular practice among the nurses to complete hospital forms for one another, when busy.
Gibson also cites as error the sample’s storage in Officer Laird’s refrigerator. Yet Laird’s action, rather than grounds for reversal, is an instance of his dedication to his profession, properly preserving evidence for analysis, with no “indication or reasonable inference of probable tampering,” sufficient to break the chain of possession. In fact, Sharon Jones, a forensic scientist, testified that she herself opened the styrofoam box’s seal at the Mississippi Crime Laboratory, two days after Talley had closed it, thereby precluding any possibility of tampering by Laird.
Lastly, Gibson argues that the State again “failed to lay a proper foundation” for the blood test’s introduction into evi *235 dence. Relying on State v. Brewer, 344 A.2d 54, 56 (Me.1975), cited authority in Gibson, 458 So.2d at 1047, the appellant maintains that the State failed to show (1) the absence of an alcohol based antiseptic swab, applied immediately prior to the sample’s extraction, (2) the particular anti-coagulant drug present in the antiseptic swab, needle, suction device, or vial, if any, and (3) such drug’s effect on the blood test.
As to Gibson’s first contention, Nurse Monoghan testified that she regularly used iodine as a skin preparation, prior to the collection of a blood sample for the police, being aware of the need to avoid an alcohol based mixture. Although she has no recollection of this particular sample, Monoghan stated that, given the circumstance of a police request, she would have used a skin preparation which failed to contain alcohol.
Also, there is no evidence as to any ill effect that an anti-coagulant drug has on a blood test. Moreover, no Mississippi authority speaks to such. Rather, there is testimony that (1) the emergency room nurse drew the sample into vials, not yet expired, (2) the sample remained refrigerated thereafter, until its delivery to the Mississippi Crime Laboratory, and (3) a forensic scientist, using the “standard of the art method for this type of analysis” found the sample to contain .19% alcohol by weight.
Based upon the trial evidence, there is no reason to believe that the State failed to lay a proper foundation for the blood sample’s admission as evidence. Indeed, there is nothing to indicate that an anti-coagulant drug was present, except perhaps in the hospital’s unexpired replacement vial. Other courts have noted that the presence and effect of an anti-coagulant implicates merely the weight and credibility of the evidence, not its admissibility. See, Nebraska v. Miller, 213 Neb. 274, 280-281, 328 N.W.2d 769, 773 (1983); Bean v. Riddle, 423 S.W.2d 709, 718 (Mo.1968). Here, Gibson requested no jury instructions regarding such. In addition, the State introduced the testimony of an experienced forensic scientist, who stated that the alcohol content of the blood sample was .19%; the scientist made no intimation that her findings were subject to any margin of error for the presence of anti-coagulants.
Consistent with the above, we affirm.[1]
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ„ concur.

. This case is distinguished from Stever v. State, 503 So.2d 227 (Miss. 1987), decided this day in an opinion by Justice Sullivan, in that in Stever there were no eyewitnesses, and the case was based totally on circumstantial evidence. Here we have direct evidence of the defendant’s negligence, and it is not based on intoxication alone.